UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

April 27, 2022

LETTER TO ALL COUNSEL OF RECORD

Re:   *Shayna R. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
      Civil No. 21-1803-BAH

Dear Counsel:

On July 21, 2021, Plaintiff Shayna R. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny Plaintiff's claim for disability insurance benefits. ECF 1. I have considered the record in this case and the parties' cross-motions for summary judgment. ECF 14, 16. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the SSA's ("Defendant's") motion, and affirm the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains why.

I.   **Facts**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB") and a Title XVI claim for supplemental security income ("SSI") on January 10, 2019, alleging a disability onset of June 1, 2018. Tr. 226–38. Plaintiff's claims were denied initially and on reconsideration. Tr. 126–33; 136–41. On January 8, 2021, an Administrative Law Judge ("ALJ") held a hearing. Tr. 33–69. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 12–28. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

The ALJ first found that Plaintiff "meets the insured status requirements of the Social Security Act through June 30, 2023." Tr. 17. The ALJ next found that Plaintiff "has not engaged in substantial gainful activity since June 1, 2018, the alleged onset date . . . ." Tr. 17. The ALJ next found that Plaintiff has the severe impairments of "depression, bipolar disorder, anxiety and post-traumatic stress disorder (PTSD) . . . ." Tr. 17. The ALJ also found that Plaintiff has a record of "obesity and asthma," but determined that these impairments had no "more than a minimal effect on the claimant's ability to perform basic work activities" and thus, were "not severe." Tr. 18. The ALJ next determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." Tr. 18. Despite Plaintiff's impairments, the ALJ determined

that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant is able to understand, retain and carry out simple instructions with few work place changes. The claimant can have occasional decision-making. The claimant must avoid a fast, production rate pace, such as with quotas, piecework or timed work. The claimant must avoid interaction with public, except for incidental contact, such providing directions to a rest room or a department in a larger facility. The claimant could engage in occasional interaction with co-workers and supervisors. The claimant can tolerate occasional exposure to temperature extremes, humidity and environmental irritants, such as dust, fumes, odors and gases.

Tr. 20. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff was not able to perform past relevant work as an "optometric assistant, a pharmacy technician[, or as a] cashier II." Tr. 25. However, "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC]," the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform including, "Bagger (DOT# 920.687-018 . . .)," "Store laborer (DOT# 922.687-058 . . .)," and "Tagger (DOT# 229.587-018 . . .)." Tr. 26–27. Therefore, the ALJ concluded that Plaintiff was not disabled because Plaintiff "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 27.

## II.     Discussion

Plaintiff raises one overarching issue on appeal: that the ALJ's RFC does not reflect all of Plaintiff's substantiated limitations. Pl.'s Br. 9, ECF 14-1. More specifically, Plaintiff alleges that the ALJ posed an improper hypothetical question to the "vocational expert" ("VE") that failed to include all of claimant's impairments. *Id.* (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). Plaintiff avers that the ALJ did not "adequately evaluate the opinion of [Plaintiff's] treating psychiatrist, Dr. Payne." *Id.* at 10. According to Plaintiff, Dr. Payne opined that Plaintiff "has 'moderate' limitations in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and perform at a consistent pace with a one-hour lunch break and two 15 minute rest periods." *Id.* at 10 (citing Tr. 556). Plaintiff contends that Dr. Payne's definition of "moderate" meant that Plaintiff could not function in these areas "one -third of an eight-hour work day." *Id.*

Plaintiff also alleges that the ALJ ignored evidence in the record that supported Dr. Payne's conclusion that Plaintiffs mental health caused "extreme" and "marked" limitations on Plaintiff's RFC. *Id.* at 11. Specifically, Plaintiff alleges that the ALJ ignored treatment notes from "Thrive Behavioral Health" and that the "ALJ's explanation also fails to mention that [Plaintiff] attempted suicide in February of 2019." *Id.* Finally, Plaintiff alleges that the "ALJ incorrectly assumes that [Plaintiff] can work full time because [Plaintiff] uses a public bus at times, uses Lyft, pays bills, uses bank accounts, prepares simple meals, performs some chores, reads, watches TV, plays games

*Shayna R. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
Civil No. 21-1803-BAH
April 27, 2022
Page 3

on her phone and interacts with a building manager when needed." *Id.*

Defendant counters that the ALJ was "was not required to adopt Dr. Payne's opinion that [Plaintiff] was unable to focus and concentrate for one-third of an average workday, and was therefore not required to include a corresponding off-task limitation or adopt the VE's testimony to that effect." Def.'s Br. 6, ECF 16-1. Defendant also states that the ALJ cited to ample evidence in the record to find that Dr. Payne's conclusions were "not well supported by reference to any objective evidence." *Id.* at 7.

As noted, the scope of this Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

The Court first considers Plaintiff's claim that the ALJ erroneously interpreted the January 7, 2020, Mental Health Assessment ("MHA") of Dr. Cheryl Payne, DNP, CRNP-PMH, a mental health practitioner at Thrive Behavioral Health who treated Plaintiff's mental health impairments. Pl.'s Br. 10, ECF 14-1.[1] Plaintiff argues that the ALJ incorrectly interpreted Dr. Payne's findings to mean that Plaintiff's limitations were "moderate" as that term is defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Plaintiff avers that Dr. Payne's MHA defined a "moderate limitation" to mean Plaintiff is unable function in certain loosely defined areas for "one third of an eight hour workday." *Id.* (citing Tr. 556). Had the ALJ correctly adopted Dr. Payne's definition for "moderate limitation," as Plaintiff apparently contends the ALJ intended to do, the hypothetical question posed to the VE — and the corresponding RFC assessment — would have included additional limitations that would have resulted in a finding of disability because Plaintiff would be "off task more than five percent (24 minutes) of an eight hour workday . . . ." *Id.* (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)).

Defendant counters that "the ALJ was not required to adopt Dr. Payne's definition of a 'moderate limitation;' rather, the ALJ's decision must only comport with the Social Security Act as well as the Commissioner's regulations and rulings." Def.'s Br. 5–6, ECF 16-1. Defendant

---

[1] Doctor Cheryl Payne is a Certified Registered Nurse Practitioner specializing in Psychiatric Mental Health (CRNP-PMH), whom the ALJ referred to as "Practitioner Payne," Tr. 24. Dr. Payne has achieved the title of Doctor of Nursing Practice, and Plaintiff and Defendant correctly use the title "Dr." throughout their briefs. The Court will use that title, as well.

*Shayna R. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
Civil No. 21-1803-BAH
April 27, 2022
Page 4

also notes that in finding that the evidence supported a moderate limitation [as defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1], the ALJ was not required to adopt Payne's opinion that [Plaintiff] was unable to focus and concentrate for one-third of an average workday, and was therefore not required to include a corresponding off-task limitation or adopt the VE's testimony to that effect." *Id.* at 7.

Defendant has the better argument. The ALJ is not required to adopt Dr. Payne's definition of what constitutes a "moderate" impairment. Whether labeled "moderate" or "extreme," what matters at the challenged step of the ALJ's analysis is the ALJ's findings related to the degree to which Plaintiff's functioning is limited, and its impact on Plaintiff's RFC. On this front, Plaintiff is incorrect in claiming that the ALJ agreed with Dr. Payne's assessment that Plaintiff suffered "moderate" limitations as defined in the MHA. To the contrary, the ALJ was consistent in finding that Plaintiff's limitations were "moderate" as that term is defined in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* Tr. 18–20, 24. More importantly, the ALJ was thorough in explaining why the ALJ did not agree that Plaintiff's limitations were as significant as Dr. Payne claimed by providing clear citations to the record throughout the ALJ's analysis. *Id.* Ultimately, the ALJ found that Dr. Payne's MHA was "not generally persuasive" because its findings were not supported in the record and because the MHA itself provided no explanation for its broad conclusions. Tr. 24.

It bears noting that any confusion in this case as to the definition of "moderate" is due to Plaintiff's use of an apparently proprietary "check-the-box" form that is unmoored from the definitions provided in SSA regulations. In general, "check-the-box forms" of this kind are unhelpful. *See, e.g.*, *Kirby v. Kijakazi*, No. 3:21-CV-235-MOC, 2022 WL 893102, at *6 (W.D.N.C. Mar. 25, 2022) ("Pre-printed check-the-box forms are notoriously deficient."). Such forms fail to provide an explanation for the conclusions they contain and often fail to account for changes in limitations based on other factors like, for example, if a patient is taking a medication. *See, e.g.*, *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) ("[A] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration.") (internal quotation marks omitted)); *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. Appx. 468, 474 (6th Cir. 2016) ("However, it is nearly impossible to analyze whether that is true because Dr. Dittemore's check-box analysis is not accompanied by any explanation."); *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). The MHA completed by Dr. Payne is particularly unhelpful, as it borrows terminology used in the C.F.R., but then provides confusing and vague definitions for those terms that diverge from the C.F.R definitions.

For example, Dr. Payne attests that Plaintiff has a "moderate" impairment in "the ability to maintain attention and concentration for <u>extended</u> periods." Tr. 557 (emphasis in original). "Extended" is entirely undefined on the form leaving the reader to wonder if an extended time means mere minutes, or perhaps hours. The confusion grows when the form's definition for "moderate" is added to the mix. In affirming a moderate limitation, Dr. Payne attests that Plaintiff *can* work for undefined "extended" periods of time, but only for "two thirds of an eight hour workday." *Id.* But what if an "extended period" meant an hour or more? This would necessarily

*Shayna R. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
Civil No. 21-1803-BAH
April 27, 2022
Page 5

mean that Plaintiff could "maintain attention and concentration" within acceptable limits. This is one example among several where the form endorses head-scratching findings. Indeed, the form's most effective function may be to sow confusion of the very kind that Plaintiff now claims necessitates remand.

Plaintiff's second, related challenge to the ALJ's RFC finding is that the ALJ failed to adequately explain the ALJ's rejection of Dr. Payne's findings that Plaintiff has "marked" and "extreme" limitations. Pl.'s Br. 11, ECF 14-1. Plaintiff is incorrect. Again, the definitions for these terms included on the "check-the-box" form diverge from those in the C.F.R. Regardless, Plaintiff is essentially arguing that the ALJ failed to properly weigh Dr. Payne's opinion. *Id.*

"For claims filed after March 27, 2017, an ALJ must follow certain procedures when assessing the weight to which medical opinions are entitled." *Adrianna S. v. Comm'r of Soc. Sec.*, Civil No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. §§ 404.1520c). An ALJ is required to "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." *Id.* (citing 20 C.F.R. § 404.1520c(b)). Supportability and consistency are the most important factors when considering the persuasiveness of medical opinions. *Id.* (citing 20 C.F.R. § 404.1520c(b)(2)). Therefore, the ALJ is required to "explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the ALJ's] . . . decision." *Id.* Supportability generally refers to "the objective medical evidence and supporting explanations presented by a medical source . . . ." *Id.* (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency generally refers to the consistency between the opinion and "the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

Here, the ALJ adequately explained their analysis of the supportability and consistency factors of Dr. Payne's opinion. In finding Dr. Payne's opinion "not generally persuasive," the ALJ stated that "[w]hile the reported symptoms and treatment of record could reasonably support up to moderate limitations as discussed in detail above, the marked and extreme limitations are not well supported by reference to any objective evidence on the face of the opinion." Tr. 24. Further, the ALJ noted that Dr. Payne's opinion "references that the claimant's symptoms are 'severe,' which shows this opinion is based more on the claimant's subjective reports than an objection evaluation of claimant. In this regard, the opinion of marked and extreme limitations are inconsistent with the objective clinical findings in the treatment records from this very provider . . . ." Tr. 24 (citing to Exhibit 5F at 20). The ALJ notes two additional inconsistencies between Dr. Payne's opinion with the level of treatment received by Plaintiff and Plaintiff's level of activity. Tr. 24. Accordingly, because the ALJ provided substantial evidence as to why Dr. Payne's opinion was "not generally persuasive," such that no error, let alone harmful error, disqualifies the ALJ's RFC analysis, Defendant's motion must be granted.

*Shayna R. v. Kilolo Kijakazi, Acting Commissioner of Social Security*
Civil No. 21-1803-BAH
April 27, 2022
Page 6

### III.     Conclusion

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF 14, is DENIED, and Defendant's Motion for Summary Judgment, ECF 16, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge